UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JAMES MICHAEL ROBINSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:23-CV-201-DCP ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 9]. James Robinson ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying Social Security Disability Insurance Benefits [Doc. 1]. For the reasons that follow, the Court will **AFFIRM** the Commissioner's decision.

**I.     PROCEDURAL HISTORY**

On December 3, 2020, Plaintiff filed an application for Disability Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on November 4, 2019 [Tr. 212]. The Commissioner denied Plaintiff's application initially [*id.* at 110] and upon reconsideration [*id.* at 115]. Plaintiff then requested a hearing before an ALJ [*id.* at 162], which was held on May 11, 2022 [*id.* at 40–76]. The ALJ found that Plaintiff was not disabled [*id.* at 17–34], and the Appeals Council denied Plaintiff's request for review on July 14, 2023 [*id.* at 1], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on September 6, 2023 [Doc. 1]. The parties have filed opposing briefs, and this matter is ripe for adjudication [*See* Docs. 12, 14, 15].

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

### A. Disability Eligibility

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

**B.     ALJ Findings**

Here, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since November 4, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: obesity, conversion disorder[1] with pseudoseizures & tremors, major depressive

---

[1] "Conversion disorder is a psychiatric condition in which emotional distress and unconscious conflict are expressed through physical symptoms." *Farmer v. Comm'r of Soc. Sec.*,

disorder, post-traumatic stress disorder, and a personality disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could perform all postural movements frequently but could not climb ladders, ropes, or scaffolds. The claimant should have no exposure to workplace hazards. When ambulating on uneven terrain of long distances, he would require the use of a hand-held assistive device. Additionally, the claimant could understand, remember, and perform simple and low-level detailed work tasks. He could make decisions required for such work tasks. The claimant could maintain concentration, persistence, and pace for two-hour periods on simple and low-level detailed tasks with normal breaks and no more than infrequent interruptions due to psychological symptoms. The claimant could have occasional interaction with supervisors and coworkers but should have no interaction with the public. He could adapt to routine, anticipated, and trained-for changes in his work tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 19, 1987 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

No. 2:19-CV-2000, 2020 WL 1482319, at *1 (S.D. Ohio Mar. 27, 2020) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 535 n. 2 (6th Cir. 2007)).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 4, 2019, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 20–33].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the

Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

6

Case 1:23-cv-00201-DCP   Document 16   Filed 08/16/24   Page 6 of 14   PageID #: 1061

IV.     **ANALYSIS**

Plaintiff raises two issues on appeal: (1) the ALJ's finding that his tremors do not cause any manipulative limitations is contrary to law and is not supported by substantial evidence [Doc. 12 pp. 4–6]; and (2) the ALJ failed to properly evaluate the medical opinion evidence consistent with agency authority and Sixth Circuit precedent [*Id.* at 7–11]. The Commissioner responds that (1) the ALJ provided reasonable accommodations for Plaintiff's conversion disorder [Doc. 14 pp. 7–8] and (2) properly evaluated Dr. Jenifer Herra's ("Dr. Herra") opinion [*Id.* at 9–11]. For the reasons more fully explained below, the Court finds that the ALJ supported the RFC with substantial evidence and considered the consistency and supportability of Dr. Herra's opinion according to the regulations. The Court will first address the ALJ's consideration of the medical evidence and then will turn to the RFC determination.

A.     **Medical Evidence**

Plaintiff argues that the ALJ did not analyze Dr. Herra's medical opinion for consistency and supportability [Doc. 12 pp. 7–11]. The Commissioner maintains that the ALJ properly analyzed all medical opinions for consistency and supportability and was not required to adopt Dr. Herra's opined limitations [Doc. 14 pp. 9–11].

The ALJ must "evaluate the persuasiveness of [the] medical opinions and prior administrative medical findings" using five factors, including the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c). Of these five factors, "[t]he most

7

important . . . are supportability and consistency." *Id.* § 404.1520c(a), (b)(2). The supportability factor means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Consistency is defined as "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). "In other words, supportability addresses whether a medical professional has sufficient justification for their *own* conclusions." *Elizabeth A. v. Comm'r of Soc. Sec. Admin.*, No. 2:22-CV-02313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (citing *Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022)) (emphasis in original). "Consistency, by contrast, requires the ALJ to compare the medical opinion at issue to "other medical and nonmedical sources." *Id.* (citing *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023)). Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain how he or she considered them." *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (internal citations omitted).

Upon her examination, Dr. Herra concluded that Plaintiff retained the ability to lift and carry less than ten pounds for any length of time, is "unable to stand and walk with cane support,"[2] could stand and walk for less than thirty minutes, could sit for about six hours but would have to change position every ten minutes, and would need to lie down at unpredictable intervals due to his seizures that occur "at least once daily" [Tr. 990]. Regarding postural activities, Dr. Herra determined that Plaintiff could never twist, stoop, crouch, or climb ladders but could occasionally climb stairs [*Id.* at 991]. Dr. Herra also indicated that Plaintiff's tremors affected his ability to reach (including overhead), handle (gross manipulation), feel, and push/pull [*Id.*]. Finally, Dr. Herra opined that Plaintiff's impairment would "substantially interfere with his . . . ability to work on a regular and sustained basis at least 20% of the time" and would require him to miss five days or more of work each month [*Id.* at 992]. The vocational expert testified that these limitations are work preclusive [*Id.* at 73–74].

The ALJ found Dr. Herra's opinion unpersuasive [*Id.* at 30]. In support, the ALJ explained that the opinion was "inconsistent with the mild symptoms described in the medical treatment records from this provider," citing to Dr. Herra's treatment records from October 2021 to February 2022 [*Id.* (citing Exh. 14F/4)]. Plaintiff contends that this statement by the ALJ "does not cite what findings he was relying on for this broad assertion" [Doc. 12 p. 10], but in making this statement, the ALJ identified specific evidence from Dr. Herra's own records that was inconsistent

---

[2] Dr. Herra wrote that Plaintiff is "unable to stand and walk with cane support" [Tr. 990]. However, this statement appears to be at odds with her other comments that Plaintiff could stand and walk for less than "30 mins" during an eight-hour day, could stand for thirty minutes before changing position, and that he has "significant tremors without cane" [*Id.* at 990–91]. The Court also notes that the ALJ construed this opined limitation as "unable to stand or walk without a cane for support" [*Id.* at 30].

9

with her findings. *See Creter v. Saul*, No. 1:20-CV-00840, 2021 WL 809323, at *11 (N.D. Ohio Mar. 3, 2021) ("The Sixth Circuit has found that inconsistencies between a treating physician opinion and his/her own treatment records is a proper basis for rejecting a treating physician opinion." (citing Sixth Circuit cases)); *Hague v. Comm'r of Soc. Sec.*, No. 20-13084, 2022 WL 965027, at *4 (E.D. Mich. Mar. 30, 2022) (finding the ALJ sufficiently articulated the consistency factor by citing "specific documents in the record" that were "specific enough for the Magistrate Judge to assess the reasoning behind the ALJ's assertion"). Moreover, the ALJ explained "these records showed very mild physical abnormalities with no findings that would support such restrictive limitation" [Tr. 34]. The ALJ further noted that Dr. Herra's opinion "appear[ed] to be based more on [Plaintiff's] subjective allegations than on the objective evidence of record" [*Id.* at 30]. *See Hague*, 2022 WL 965027, at *4 ("The ALJ's observation that '[t]he doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported' is a criticism of Dr. Bray's explanation of his reasoning, or 'supportability.'"). As previously noted, the regulations do not require ALJs to explain their analysis of the supportability and consistency factors with a specific level of detail, and here, the Court finds that the ALJ's analysis sufficiently articulated the supportability factor with respect to Dr. Herra's opinion.

As to consistency, while the ALJ did not directly discuss this factor in the same paragraph addressing the persuasiveness of Dr. Herra's opinion, he did evaluate the consistency of Dr. Herra's findings by referencing other evidence from medical and nonmedical sources elsewhere in his opinion. Dr. Herra's opinion, unlike any other opinion in the record, would preclude Plaintiff from working at all. According to Dr. Herra, Plaintiff is able to sit for six hours and stand for

10

thirty minutes, he needs to lie down at unpredictable intervals, and would be absent from work five days or more each month [Tr. 990, 992]. These limitations are work preclusive as they indicate Plaintiff could not work for eight hours a day. *See* SSR 96-8p, 1996 WL 374184, *1 (A plaintiff's "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting [for] 8 hours a day, for 5 days a week, or an equivalent work schedule"). Further, Dr. Herra opined that Plaintiff was unable to use his upper extremities for reaching, handling,[3] feeling, and pushing/pulling [Tr. 991]. These limitations are contradicted by the State Agency's consultants' report, which the ALJ discussed immediately after finding Dr. Herra's opinion unpersuasive. The ALJ explained that the State Agency's physicians found Plaintiff had "no exertional limitations and could perform all postural movements on an unlimited basis but should never climb ladders, ropes, or scaffolds" [*Id.* at 30 (citing Exh. 2A)]. While the ALJ found this opinion somewhat persuasive, he concluded that Plaintiff is "further limited to the performance of light work activity to give full consideration to his subjective complaints" [*Id.*]. In light of this discussion, which immediately follows the ALJ's finding that Dr. Herra's opinion is unpersuasive, the Court is able to "discern an accurate, logical bridge between [the ALJ's] assessment of the evidence and the weight he assigned to [Dr. Herra's] opinion." *Burns v. Kijakazi*, No. 5:20-CV-00328, 2022 WL 363848, at *4 (E.D. Ky. Feb. 7, 2022). "Even ignoring the inadequately explained reasons here noted . . . , [the] ALJ's remaining bases for his weighing of Dr. [Herra's] opinion[] are sufficiently clear and supported to provide substantial evidence for the

---

[3]   In the check box form, Dr. Herra noted that due to tremors, Plaintiff was limited in handling (gross manipulation) but not limited in fingering (fine manipulation) [Tr. 991]. However, in discussing Dr. Herra's opinion, the ALJ incorrectly noted "[Plaintiff] could not perform fine manipulations [*Id.* at 30].

11

outcome, when fairly construed in light of the ALJ's decision as a whole." *Id.* (citations omitted); *See also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ evaluation of opinion where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion).

In addition, the ALJ discussed other evidence in the record elsewhere in his opinion. For example, the ALJ acknowledged Plaintiff's report that his tremors "cause difficulty walking to the point he needed a cane for ambulation assistance . . . [and] also cause him to drop things frequently" [Tr. 24]. However, the ALJ also noted that Plaintiff included playing video games as one of his hobbies, reported being able to perform self-care activities with some modifications, prepare simple meals, text his friends, and "neurological examination showed normal muscle bulk and tone in the upper and lower extremities" [*Id.* at 25]. "The Sixth Circuit has held that meaningful judicial review exists—even if the ALJ provided only a cursory or sparse analysis—if the ALJ made sufficient factual findings elsewhere in the decision that support his conclusion." *Deanna B. v. Comm'r of Soc. Sec. Admin.*, No. 1:22-CV-00604, 2024 WL 445391, at *5 (S.D. Ohio Feb. 6, 2024) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the decision to affirm the ALJ's step three analysis, and finding no need for the ALJ to "spell out every fact a second time") and *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (finding that the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three)), *report and recommendation adopted*, No. 1:22-CV-604, 2024 WL 1333281 (S.D. Ohio Mar. 28, 2024). Thus, while the ALJ did not specifically discuss parts of other medical opinions that conflicted with the particular limitations in Dr. Herra's

12

opinion when stating he found her opinion unpersuasive, he did evaluate the consistency of her findings elsewhere in his opinion and thereby did observe 20 C.F.R. § 404.1520c. *See Hill*, 560 F. App'x at 551 (explaining the ALJ's review of a medical opinion should be considered by viewing the decision as a whole).

### B. Manipulative Limitations

Plaintiff argues that the ALJ erred in not including manipulative limitations in the RFC to accommodate his tremors, which the ALJ found to be severe [Doc. 12 pp. 4–6; Doc. 15 pp. 1–4]. The Commissioner argues that the ALJ provided reasonable accommodations for the Plaintiff's conversion disorder, to the extent supported by the record, by limiting him to light work without exposure to hazards [Doc. 14 pp. 7–8].[4]

While Dr. Herra found that Plaintiff's tremors affected his ability to reach (including overhead), handle (gross manipulation), feel, and push/pull (collectively, "manipulation limitations") [Tr. 991], the ALJ found Dr. Herra's opinion unpersuasive and was not required to adopt these limitations. *Gregson v. Comm'r of Soc. Sec.*, No. 17-CV-13600, 2019 WL 1253473, at *7 (E.D. Mich. Jan. 2, 2019) ("[A]t all times, the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence that he finds

---

[4] The parties dispute whether the ALJ found Plaintiff's tremors to be a severe impairment and whether he erred in not including any limitations relating to Plaintiff's tremors [*See* Doc. 14 p. 7; Doc. 15 pp. 1–2]. The Commissioner argues that "the ALJ did not find [Plaintiff's] tremors to be a severe impairment[, r]ather, the ALJ concluded that Plaintiff's severe impairment was a 'conversion disorder with pseudo-seizures and tremors'" [Doc. 14 p. 7 (citing Tr. 20) (cleaned up)]. Plaintiff maintains this is a distinction without a difference and that the "ALJ failed to include any manipulative limitations in the RFC to account for [Plaintiff's] tremors" [Doc. 15 p. 2]. The ALJ found Plaintiff's "conversion disorder with pseudoseizures & tremors" was severe [Tr. 20]. For the reasons addressed in the opinion above, the ALJ considered this severe impairment and provided limitations for it to the extent he found such limitations supported by the record.

13

to be well supported and consistent with the record as a whole."), *report and recommendation adopted*, No. 17-13600, 2019 WL 762272 (E.D. Mich. Feb. 21, 2019). Further, the State Agency's physicians opined that Plaintiff had no manipulative limitations [Tr. 82]. Therefore, the ALJ was not required to include manipulative limitations in the RFC, which was otherwise supported by substantial evidence. Finally, while the ALJ found Dr. Herra's opined manipulative limitations unpersuasive, he ultimately provided physical limitations such as Plaintiff performing light work, not climbing ladders, ropes, or scaffolds, no exposure to workplace hazards, and using a hand-held assistive device when ambulating on uneven terrain for long distances [*Id.* at 23]. Thus, "[t]he decision reflects the ALJ considered Plaintiff's capacity for manipulative functioning, and determined a limitation for light work was sufficient." *Laymon v. Comm'r of Soc. Sec.*, No. 1:18-CV-00021, 2019 WL 1552500, at *8 (E.D. Tenn. Feb. 12, 2019).[5]

## V. CONCLUSION

Based on the foregoing, the decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

**ORDER ACCORDINGLY.**

Debra C. Poplin
United States Magistrate Judge

---

[5] Plaintiff argues that the ALJ's failure to account for Plaintiff's manipulative limitations is potentially outcome determinative under SSR 85-15 [Doc. 12 p. 6; Doc. 15 p. 3]. The Commissioner responds that SSR 85-15 does not apply to this case because the ALJ provided exertional as well as non-exertional limitations in the RFC assessment [Doc. 14 p. 8]. Despite Plaintiff's argument that the "RFC involves missing or understated nonexertional limitations (such as, here, difficulties using the hands due to tremors)," the Court finds that no such error or "inaccuracy" exists in the ALJ's RFC for the reasons expressed above [Doc. 15 p. 3].